# Norton *v.* Norton.

*Bill in Equity by Administrator, for Removal of Settlement from Probate Court; and by Distributee for Account of Rents and Profits.*

| 94 | 481 |
|----|----|
| 98 | 347 |
| 94 | 481 |
| 104 | 425 |

1. *Removal of settlement into equity by administrator.*—An administrator may, notwithstanding his removal from the office, maintain· a bill in equity to remove the settlement of his administration from the Probate Court, on averment and proof of the existence of a special equity which that court can not adjudicate; and where his bill shows a contest between the heirs and distributees as to the rents of the lands, and a bill is filed between them as to that matter, the two causes being consolidated by consent, and submitted for adjudication and settlement of all the equities among the parties, the appellate court will not regard the objection, raised here for the first time, that the administrator's bill shows no sufficient reason for the removal of the settlement.

2. *Widow's quarantine rights.*—Under statutory provisions, the widow of an intestate is entitled to retain, free of rent, until her dower is assigned, the possession of the dwelling-house in which her husband most usually resided next before his death, with the offices and buildings appurtenant thereto, and the plantation connected therewith (Code, § 1900); but this right is not an estate in the land, is not alienable, and terminates when 'she loses the right to dower.

3. *Widow's homestead exemption.*—The widow is entitled, also, to a homestead exemption, not exceeding 16⁰ acres in area and $2,000 in value, for life or in fee, as determined by the solvency or insolvency of the husband's estate (Code, § 2543); but, if she sells and conveys her interest, and then abandons the homestead, she forfeits the rents and profits accuring to her under the statute, and her alienee does not acquire any right to them as against the heirs.

4. *Widow's dower rights, and alienation thereof.*—The widow is dowable of all the lands of which her husband was seized and possessed during the coverture (Code, § 1892), including the lands which have been allotted to her as a homestead, though the right is in abeyance as to them so long as she occupies the homestead; and if she sells and conveys her entire interest in the lands to one of the heirs, dower not having been allotted to her, and then abandons the homestead, her alienee is entitled, in equity, to recover the rents and mesne profits to which she would have been entitled if she had abandoned the homestead without conveying her dower interest; and also her share of the proceeds of sale of the lands.

16

[Norton v. Norton.]

APPEAL from the Chancery Court of Barbour.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 11th of August, 1890, by E. T. Norton individually, and as administrator of the estate of his deceased father, John J. Norton, against the surviving widow and the other heirs and distributees of the estate; and sought to remove the final settlement of his administration from the Probate Court of said county, in which it was pending. John J. Norton died in August, 1887, leaving a surviving widow, Mrs. Josephine Norton, who was his second wife, and ten children by a former wife; and letters of administration on his estate were granted to the complainant on the 28th of September, 1887. On the 8th of November, 1887, the widow filed her petition asking that a homestead be set apart and alloted to her, and describing the 160 acres which she selected; and an order was thereupon made by the probate judge, on the same day, setting apart those lands to her as a homestead. On the same day, Nov. 8, 1887, the widow sold and conveyed by quit-cliam deed to Henry T. Norton, one of the heirs and distributees, all her "right, title, interest and claim in and to the property; real and personal, embracing my [her] homestead and dower interest, belonging to the estate of John J. Norton, deceased." This instrument recited as its consideration the payment of $570 by said Henry T. Norton, and also acknowledged the receipt from the administrator of her distributive portion of the personal property. The widow then removed from the homestead, and Henry T. Norton entered upon it; but no assignment of dower was ever made to her. The decedent in his life-time had sold two tracts of land, taking the purchaser's notes for the unpaid purchase-money; and these notes were sold by the administrator, under an order of the Probate Court, and bought by the several distributees. The administrator also sold eighty acres of the land under an order of the Probate Court; and an order was made directing the sale of the residue, including the widow's dower. On the 21st of January, 1890, an order was made by the Probate Court removing the administrator, and requiring him to file his accounts and vouchers for a final settlement. The account thereupon filed by the administrator was contested by all of the distributees except Henry T. Norton, on the ground that he was liable for the rents of the land, which rents were also claimed by Henry T. Norton under his purchase from the widow; and he also claimed her share of the proceeds of the lands sold.

The administrator stated in his bill the contest which had thus arisen between the distributees, with other matters, as

reasons why the Probate Court was incompetent to make a full settlement of his administration. An answer and statutory cross-bill was filed by Henry T. Norton, asserting his rights as purchaser from the widow; but this cross-bill was dismissed, and an original bill was then filed by him for the same purpose. The two causes were heard and submitted together by consent, under an agreement that the chancellor should "render a decree settling all the rights and equities of each and every party involved in either or both of said suits, and granting appropriate relief to each and every party as the facts may justify."

The chancellor held that the bill by the administrator contained equity, and ordered him to file his accounts and vouchers for a final settlement. He then ordered a sale of the lands to be made by the commissioners who had been appointed by the Probate Court, and the proceeds to be paid to the register for distribution among the parties entitled. He further held that Henry T. Norton, as purchaser of the widow's dower interest, was entitled to one-sixth of the proceeds of sale, and also to one-third of the rents of the whole plantation, dower not having been assigned to the widow. In his opinion accompanying the decree, the chancellor said that H. T. Norton, while entitled to one-third of the rents, was accountable for two-thirds of the rents while he was in possession; but this was not mentioned in the decree, which only reserved all other questions not above stated. From this decree an appeal is sued out by all of the defendants except Henry T. Norton, and they assign as error each part of the decree granting him relief; and he makes a cross-assignment of error, because the court decreed to him only one-third (instead of all) of the rents.

JERE N. WILLIAMS, for appellants.

A. H. THOMAS, H. D. CLAYTON, and G. W. PEACH, contra.

CLOPTON, J.—E. T. Norton was appointed, in September, 1887, administrator of the estate of John J. Norton, by the Probate Court of Barbour county. In November thereafter, Josephine Norton, the widow of the decedent, sold and conveyed to Henry T. Norton, one of the heirs, all her right, title, interest and claim, in and to the real property of her deceased husband, including the homestead, and moved off the land; Henry T. Norton entering into possession under his purchase. No assignment of dower has ever been made. E. T. Norton, having been removed from the administration,

filed in the Probate Court an account for final settlement, which was contested by the heirs. Thereupon, he filed the bill for the purpose of removing the settlement of his administration into the Chancery Court. Henry T. Norton, whose cross-bill had been dismissed without· prejudice, filed 'an original bill setting forth his purchase of the ·dower interest and the widow's conveyance thereof, and basing thereon a prayer for a decree to the effect, that he·is entitled to dower, and also to all the rents of all the lands of the decedent. By agreement of counsel both suits were heard together, and one decree rendered.

It is well settled, that to authorize the removal of the settlement from the Probate to the Chancery Court, on the application of the administrator, there must arise some question or matter which the Probate Court, by reason of its limited powers, is incompetent to determine. When, however, a special equity exists, there can be no sufficient reason why the final settlement of a removed administrator may not, on his application, be . transferred to, and made in the Chancery Court. Though his office and functions as administrator are terminated by removal, he is required to make final settlement of his administration, which should be made in a court having jurisdiction and power to determine and adjust all the equities arising thereon. The ascertainment of the amount of rents to which the heirs and the widow, or her assignee, are respectively entitled, is preliminary and essential to a full and complete settlement of the administration. It is well settled, that the Chancery Court has exclusive jurisdiction to award to the widow rents or *mesne* profits between the death of her husband and the assignment of dower.— *Wood v. Morgan,* 56 Ala. 397. No objection having been made during the pendency of the suit to the bill, on the ground that the administrator has no right to remove the settlement into the Chancery Court, and as the bills and all the pleadings show that questions arise which should be determined before the final settlement is completed, of which the Chancery Court has exclusive jurisdiction, and as the parties agreed that the two suits should be submitted and heard together, and a decree rendered settling all the equities of all the parties in both suits, we shall not regard such objection, made for the first time in this court.

No objection is urged to the execution of the order for the sale of the lands, made by the Chancery Court, or to the payment to H. T. Norton of a fair equivalent for the dower interest out of the proceeds of the sale, in lieu of an assignment of dower by metes and bounds. The main point of contention

[Norton v. Norton.]

is, whether H. T. Norton is entitled, by virtue of his purchase of the dower interest, to one-sixth of the proceeds of the sale, and to the rents of all the lands, including the homestead. · Appellants concede that he is entitled to one-sixth of the proceeds of the sale, and one-third of the rents of the lands, exclusive of the homestead.

The statutes confer on the widow the right to retain possession of the dwelling where her husband most usually resided next before his death, with the offices and buildings appurtenant thereto, and the plantation connected therewith, free from the payment of rent, until her dower is assigned; also, to have set apart the homestead, not exceeding in value two thousand dollars, and in area one hundred and sixty acres, as exempt from administration and the payment of debts; and dower of all lands of which the husband was seized in fee during coverture.—Code, §§ 1892, 1900, 2543. These rights are essentially distinct, and different incidents attach. The widow's quarantine is a personal right or privilege—the right to the use and occupation of the property by herself or tenants, until dower is assigned. This right is not an estate in the land, which can be sold under execution at law, or alienated; it terminates whenever the widow deprives herself of the right to dower by release to the heir, or in any other manner.—*Boynton v. Sawyer*, 35 Ala. 497. Not being alienable, the transferree of her dower interest can base no claim to all the rents of all the lands on her right of quarantine.

Neither can such claim be founded on the widow's conveyance of the homestead. The statute exempts the homestead in favor of the widow and minor children, if any, in any event, during the life of the widow, or the minority of the children, which ever may last terminate; and if there be no minor children, the rents and profits of such homestead enure to the benefit of the widow during her life. The statute, having the beneficent purpose of furnishing the widow a home, confers the right of occupancy as a dwelling-place during her life. Under the law as it was at the time of the alienation of the dower interest, she may abandon it, and acquire a new homestead; but she could not convey or incumber it. In *Barbour v. Williams*, 74 Ala. 331, it is said: "The abandonment works a destruction of her privileges, and as she has no power of alienation, if she does alien it, like the alienation of her right of dower before assignment, the descent to the heir is not intercepted, and he may maintain ejectment against her alienee, or those entering under him." By her removal from the homestead after alienating it, the widow forfeited the

rents and profits which enure to her benefit under the statute, and her alienee acquired no claim thereto by virtue of her conveyance to him. The rights of the parties are not affected by the act of February 23, 1889, "For the protection of widows and minor children." The second section applies to homesteads previously set apart, but not abandoned at the time of the passage of the act.—Acts 1888–9, p. 113.

It may be, that when a homestead has been set apart to the widow—being a larger use and enjoyment during her life—the right of dower and its allotment are in abeyance, but the right is not thereby extinguished. As we have said, she is, under the statute, dowable of all the lands of which her husband was seized in fee during the marriage. On her abandonment of the homestead, if it has been set apart, her right to dower in the premises so set apart becomes operative, the same as if no homestead had been selected and set apart. In this case, however, no homestead was set apart; the order of the Probate Court being void for want of jurisdiction.—*James v. Clark*, 89 Ala. 606. The alienation of the homestead being void, Henry T. Norton, the complainant in the second bill, is only entitled to the rents or *mesne* profits to which the widow would have been entitled had she abandoned the homestead without conveying her dower interest. In such cases, she would have been entitled to one-sixth of the proceeds of all the lands including the homestead, and to one-third of the rents of all the lands of which she is dowable, from the death of her husband to the assignment of dower. The decree is in accord with these views.

The assignment of error, that the chancellor in the decree does not require Henry T. Norton to account for the rents during his possession of the premises, is not well founded. The decree, as we understand it, requires him to account for them.

The decree is affirmed on the original appeal. Henry T. Norton takes nothing by the cross-assignment of error.

Affirmed.