# Burrus *v.* Meadors.

## *Statutory Action in nature of Ejectment.*

1. *Adverse possession, as between father and son, under permissive entry.*—When a son enters into possession of a part of his father's lands, not by purchase, but by permission and consent of the father, who continues to pay the taxes, while the son cultivates the land and disposes of the crops from year to year, the possession is not adverse, and the statute of limitations does not begin to run, until there is an open disclaimer and assertion of hostile title, and knowledge thereof brought home to the father.

2. *Same, as between tenants in common.*—If the possession of the son, in such case, did not become adverse to the father during life, it would not be adverse to the other heirs-at-law after his death, without an actual eviction, or refusal to permit them to enter, unless there was an adversary claim under the will.

3. *Conclusiveness of award.*—An award may be valid in part, and may be sustained and enforced as to that part, if the objectionable part can be readily distinguished, and rejected as surplusage; and so far as valid, it has the conclusiveness and effect of a judgment, operating by way of estoppel on the parties, though it does not pass the title to real estate, nor affect the rights of third persons.

APPEAL from the Circuit Court of Lee.

Tried before the Hon. JESSE M. CARMICHAEL.

[Burrus v. Meadors.]

This action was brought by P. A. Burrus, three minor children who sued by him as their next friend, and T. E. Blanchard, against B. F. Meadors, J. B. Meadors, and Lewis Meadors, to recover the possession of a tract of land containing about 85 acres, particularly described in the complaint, and was commenced on the 27th August, 1885. The land was part of a tract which had belonged to Isham Meadors, who died in the latter part of the year 1878, or early in 1879; and whose last will and testament was duly proved and admitted to probate on the 10th March,. 1879. By said will the testator gave a life-estate to his widow in all of his property, and devised his lands equally to his four sons after her death; the tract here in controversy being devised to B. F. Meadors, one of the four, who was also one of the defendants, and who was in possession of it for several years prior to his father's death, under a parol gift, or by permission and consent of his father. The land was sold on the 7th April, 1884, by W. K. Meadors as administrator, under a probate decree for the payment of debts, the estate having been previously declared insolvent on his petition; and it was purchased at the sale by "Burrus & Blanchard," who paid the purchase-money, as shown by his report, and the sale was confirmed. The plaintiffs seem to have claimed under this purchase, but the record does not show how they derived title under or by succession from said "Burrus & Blanchard." The defendants seemed to have claimed also under a deed or conveyance from Isham Meadors to said B. F. Meadors; but the only recital in reference to it is a statement in the bill of exceptions, "The court excluded all the evidence in relation to deed to defendant, and submitted the cause on the question of adverse possession."

"Plaintiffs offered in evidence on the trial," as the bill of exceptions states, "the following records from the Probate Court of said county of Lee," namely: (1) the will of said Isham Meadors, with its probate; (2) the grant of letters testamentary to said T. C. Meadors, one of the four sons named as executors; (3) revocation of said letters, on the petition of W. K. Meadors, and the subsequent grant of letters of administration to the latter; (4) the administrator's report of the insolvency of the estate, and the declaration of insolvency by the court; (5) a petition by the administrator for an order to sell lands for the payment of debts, with objections thereto filed by the other heirs; (6) the order of sale as granted, and subsequently amended; (7) the administrator's report of the sale, stating the payment of the purchase-money by "Burrus & Blanchard," and asking a confirmation; and (8) an order confirming the sale, against the objections filed by the heirs.

"Plaintiffs then proved the execution of a deed to them by said administrator, conveying the lands here sued for in compliance of said order of the court above set forth, and proved by a number of witnesses that said Isham Meadors was in possession of the land, continuously, from 1866 up to his death in 1879, and paid taxes on it; that said land was part of a tract originally purchased by him from one Vaden, and was called the Vaden place; that he built a house on the land, but not on the 85 acres here sued for; that the defendant, a son of said Isham, lived with him—that is, on his land, first at one place, and then at another—and lived in said house from 1870 to 1876. The defendant proved by himself, and by other witnesses, that he had for years claimed said land, and had been in possession of it for more than ten years before the commencement of the suit. One Murphy, the witness, answering, said that he did. Defendant then asked said witness, if, while defendant was at the house on the Vaden place, he heard defendant say that the crops on said 85 acres were his; and answered, that the defendant did claim said crop." To this question the defendants objected, and excepted to its allowance; but no objection was made to the answer.

"Further, in rebuttal," as the bill of exceptions then states,. "the plaintiffs offered in evidence, after having proved the execution and delivery thereof to said W. K. Meadors as administrator, each of the following papers," namely: (1) an agreement signed by the widow and the four sons of said Isham Meadows, to submit all matters in dispute between them to the arbitrament of four persons named; (2) the award of the arbitrators; (3) a writing under seal signed by the administrator, and another signed by the sons, ratifying and confirming the award, and consenting to the sale of the lands as therein directed. The agreement to submit to arbitration, which was under seal, and dated July 16th, 1883, embraced, using its own words, "all our transactions of business during the existence of the partnership under which we did business, for an equitable settlement between us of all matters relating thereto, with all evidences thereon showing the legality and equity of each; and further, with the evidence of each for himself, both for and against, all deeds and paper titles of every kind, to any property now claimed by us, formerly belonging to the estate;" and it bound the parties to accept the award as final and conclusive, and to perform it in good faith. The award of the arbitrators, which covers over ten pages of the transcript, was dated August 29th, 1883, and decided, among other things, (1) that the several conveyances executed by Isham Meadors to his four sons, conveying to each a portion of his lands, were null

[Burrus v. Meadors.]

and void; (2) that the estate was indebted to each of the sons, in sums varying from about one thousand to over four thousand dollars, and to other creditors in sums aggregating about seven hundred dollars; (3) that the lands should be sold on the 15th November, 1883, by said administrator, who was to be continued in office, for the payment of these debts as ascertained, a portion being set apart to the widow as her dower; and (4) that all of the sons should join with the administrator in the execution of conveyances and bonds for title to the purchasers.

The decree declaring the estate insolvent is not dated, but a recital in another decree states that it was made on the 13th August, 1882. Several orders of sale seem to have been made by the Probate Court, and several sales made and reported by the administrator, all of which were confirmed by the court, and all were made after the award and the ratification thereof by the parties; but the confused state of the probate record, as copied in the transcript, renders it impossible to state the date of the sale of the particular lands here in controversy, or the day on which it was confirmed. The plaintiffs offered in evidence these papers showing the submission, award, and papers ratifying it, as the bill of exceptions states, "all together, and then separately, and defendants objected to their introduction; which objection was sustained by the court, and said papers refused as evidence, separately and as a whole, because the oral and other testimony showed that the agreement and arbitrament were disregarded and never carried out; to which rulings plaintiffs excepted."

The court gave the following charges in writing, at the instance of the defendants, the plaintiffs excepting to each: (1.) "If the jury find from the evidence that B. F. Meadors was in adverse possession of the land, for ten years before this suit was brought, claiming it as his own, they must find for the defendants, even if they find that his father gave it to him." (2.) "If the jury find from the evidence that B. F. Meadors was in adverse possession of the land, for ten years before this suit was brought, claiming it as his own, they must find for the defendants, even if they find that B. F. Meadors paid nothing for the land." (3.) "Actual possession is an actual, patent fact, furnishing evidence of its own existence; and no other notice is necessary to the party claiming to have the title, than such as is furnished by the possession." (4.) "If the jury find from the evidence that B. F. Meadors was in the adverse possession of the land sued for, it makes no difference whether he had color of title or not." (5.) "The records of the Probate Court do not preclude B. F. Meadors from setting up the defense of adverse possession.

[Burrus v. Meadors.]

The several rulings on the evidence and the charges given and excepted to, are assigned as error.

HARRISON & LIGON, for appellant.

JNO. M. CHILTON, *contra.*

STONE, C. J.—The question propounded to the witness Murphy on cross-examination, is not so clearly stated as that we can feel safe in ruling on it.

Considering all the testimony in this case, we feel justified in inferring that defendant B. F. Meadors went into possession of the land in controversy under and with the consent of his father. The fact, unexplained, that the father continued to pay the taxes on the land until his death, showed that he had not relinquished all claim to it. Acquiring possession, not by purchase, but permissively under his father, it requires more than the exercise of the ordinary acts of ownership to convert that possession into an adverse holding. Cultivating the land, and disposing of the crops from year to year, are not enough to accomplish that purpose. To have such effect, in a case like the present, there must have been an open disclaimer, and assertion of hostile title, and knowledge thereof carried home to Isham Meadors, the father.—3 Brick. Dig. 17, §§ 20, 21; *Woodstock Iron Co. v. Roberts*, 87 Ala. 436. And until such disclaimer is carried home to the holder of the title, the statute of limitations does not begin to run.

Another principle may shed light on this case. The possession of a tenant in common is not adverse to that of his co-tenant, unless there is an actual ouster, or refusal to let the co-tenant occupy.—*Newbold v. Smart*, 67 Ala. 326. Being one of the heirs-at-law of Isham Meadors, when the latter died, until there was adversary claim set up under the will, or by the personal representative, the heirs-at-law were authorized to occupy the lands which were of the estate of the ancestor, as tenants in common, and the possession of one was not *prima facie* adverse to the rights of the others. Hence, unless B. F. Meadors had, under the rule stated above, acquired the *status* of an adverse holder before his father's death, he could not acquire it afterwards, without actually evicting his co-tenants, or, what is the same thing, refusing to permit them to enter.

We will not point out the defects in the various charges. Charges 2 and 3, given at the instance of defendant, are manifestly wrong; and for those errors the judgment of the Circuit Court must be reversed. The third was not faulty as a universal

proposition, but, when construed in the light of the evidence before the jury, it can not be vindicated.—3 Brick. Dig. 109, §§ 33–4.

In 1883, while W. K. Meadors was the administrator of the estate with the will annexed, the four brothers, heirs-at-law of Isham Meadors, together with their mother, submitted to the arbitrament of five selected persons, not only all matters and dealings growing out of the partnership, but also agreed "to submit, with the evidence of each for himself, both for and against, all deeds and paper titles of every kind to any property now claimed by us, formerly belonging to said estate;" and they agreed that the award made by the arbitrators should be "final and binding." At that time a good deal of litigation was pending between the brothers in reference to property which had belonged to their father's estate.

The arbitrators acted, making a most elaborate award, covering, so far as we can discover, the entire assets of the estate, real and personal, and every subject of contention between the brothers, having any connection with the estate of Isham Meadors, their father. Among other findings of the arbitrators is the following: "We find that all the lands claimed by the children and heirs of Isham Meadors, late of Lee county, deceased, of right belong to the estate of said Isham Meadors, and are subject to the payment of his just debts," after allowing the widow's dower. This award was rendered in August, 1883, and ascertained several large sums that were due from Isham Meadors' estate to his several children. It also ascertained other debts due from the estate to creditors other than the heirs, and who were not parties to the submission or award, aggregating seven hundred and forty-four dollars. The arbitrators awarded that all of said lands, including the tract involved in this suit, be sold by the administrator, W. K. Meadors, for one half cash, and the other half at twelve months, and the proceeds applied to the payment of the debts of Isham Meadors" estate. The estate had been decreed insolvent in 1882, by regular proceedings in the Probate Court instituted for the purpose by the administrator.

On the same day on which the award was made—August 29, 1883—the brothers executed deeds, one to the other, by which they expressly ratified the award of the arbitrators. The administrator did not sell the land under the award of the arbitrators, but petitioned the Probate Court for an order of sale, obtained it, made the sale, and reported it; it was confirmed, and, under the court's order, titles were made to the purchasers. These several pleadings came before this court on appeal, and were pronounced regular.—*Meadors v. Meadors,*

78 Ala. 246; *Same v. Same*, 81 Ala. 451. One Burrus and one Blanchard became the purchasers of the land sued for in this action; and receiving title, Blanchard and the heirs of Burrus, he having died, instituted this suit.

The present suit was instituted in August, 1885, and the defense relied on was the statute of limitations—adverse possession for ten years before suit brought. In preclusion of this defense, among other evidence, the plaintiffs offered the agreement submitting the matters of dispute to arbitration, mentioned above, the award of the arbitrators, and the deeds of ratification. These were offered severally, and as a whole. The court, on objection of defendants, excluded the evidence, stating the reason on which the ruling was based, as follows: "Because the oral and other testimony showed that the agreement and arbitrament were disregarded and never carried out." The only disregard of the award as made, which could affect B. F. Meadors, was that the administrator sold the land under the order of sale, and for cash, and not under the award of the arbitrators, and under the terms prescribed by them.

We have shown above that there were other creditors of the insolvent estate of Isham Meadors, besides the Meadors brothers, sons of the testator. Those other creditors were not parties to the arbitration, and hence the award did not conclude them as to the amounts of their several claims, nor as to the several claims of the Meadors brothers. Nor did it conclude them as to the manner and terms of the sale. If sale had been made or attempted under that award, those other creditors could have objected, and required the sale to be made under an order of court, and according to law. Aside from the harassing litigation to which a sale under the award would have exposed the administrator, a title acquired at such sale would probably have been regarded as so questionable, that prudent buyers would have been deterred from bidding. It was both the right and the duty of the administrator to obtain an order of sale, and to sell under it. We may be permitted to add, that while in the submission the parties expressly embraced all claims to parts of the land which the several contesting brothers had set up, we find no submission of the question as to how the land should be disposed of; and we are not able to see that the manner of disposing of the lands did, or could, exert any influence in deciding the validity of the several claims set up to parts of the land. "An award in part good, and in part bad, may be divided, and the objectionable part rejected as mere surplusage, if it can be readily distinguished from the rest, and the good part will be sustained."—1 Amer. & Eng. Encyc. of Law, 710. The Circuit court erred in excluding the arbitration proceedings from the jury.

[McDonald v. Carnes.]

"A valid award has the same effect as a judgment, and concludes the parties to the controversy effectually from litigating the same matters anew."—1 Amer. & Eng. Encyc of Law, 711. True, the award does not pass title to real estate, but it acts as an estoppel, and prevents the losing party from denying the superiority of the other's title.—*Ib.* 698, and 713. The defendant's reliance being on the statute of limitations, and evidenced by no paper title, the award of the arbitrators, if there were any doubt of the universality of the proposition, manifestly estops him from setting it up.

Reversed and remanded.