# Foy v. Wellborn.

*Statutory Real Action in Nature of Ejectment.*

1. *Homestead exemption in favor of widow and minor children; construction of statute.*—The right of widow and minor children to homestead exemption is governed by the law in force at the time of the death of the husband and father ; and under the act approved February 8, 1872, (Acts of 1871-72, p. 91), if the homestead at the time of the death of the ancestor exceeded in value five hundred dollars, the widow could not have asserted any just claim to it as exempt to her from administration.

2. *Widow's quarantine; adverse possession.*—Under statutory provisions (Code of 1886,§ 1900) the widow has the right to retain possession of the dwelling where the husband most usually resided next before his death, until dower is assigned her ; but such possession is permissive and not adverse to the heirs, unless she denies their right by declarations or acts unmistakably hostile, of which they have notice or knowledge, or which are so open and notorious that notice or knowledge must be imputed to them.

3. *Same; removal from and renting of premises; subsequent marriage.* Where, after the death of the husband, there is no allotment of dower, and the widow enters into possession of the homestead as allowed under the statute (Code of 1886, § 1900), neither the removal from and renting of the premises by the widow, nor her subsequent marriage, changes the nature and character of her possession; and neither works a forfeiture of her right of quarantine.

4. *Same; notice of adverse possession not given by recording indefinite tax deed.*—Where a widow enters into possession of a homestead under

[Foy v. Wellborn.]

right of quarantine, the registration of a tax deed subsequently obtained by her, in which the property is described as "one house and lot in" a certain named city, can not operate as notice to the heirs at law of her husband of an adverse claim by her to the premises; the description of the property in the deed being too indefinite to identify or render reasonably certain the property intended to be conveyed.

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. J. M. CARMICHAEL.

This was a statutory action of ejectment brought by the appellees against John P. Foy, as administrator of the estate of Mrs. Welborn, deceased, and George M. Jordan, who was tenant in possession of the land sued for. The facts of the case are sufficiently stated in the opinion.

G. L. COMER, for appellant.—All exemptions are statutory or constitutional, and must be governed by the law in force at the time the right to them accrues. Wellborn died in the city of Eufaula, Ala., in March, 1872, and at the time of his death he was a resident citizen of Alabama, and the rights of his widow in his estate must be governed by the law in force in March, 1872.—*Nelson v. McCrary*, 60 Ala. 301; *Lovelace v. Webb*, 62 Ala. 271; *Clark v. Snodgrass*, 66 Ala. 233.

Under the acts of 1871-72, p. 91, the widow of Welborn at the time of his death was entitled to receive and hold "property," "to the amount of one thousand dollars in personalty and realty;" and if the property of Wellborn, at the time of his death, including both realty and personalty, was not worth over one thousand dollars, then all of said property was exempt to his widow.

When the widow abandoned said homestead, as the law then stood, she lost all right she may have had to the same, and the right of appellees to same then accrued, if they did not accrue at the time Wellborn died; and if they permitted said widow to so rent out said homestead and collect rent for same for more than 20 years, then their claim or right to sue and recover same is barred by the statute of limitations.—*Scaife v. Argall*, 74 Ala. 473; *Pollak v. Caldwell*, 94 Ala. 149.

The court clearly erred in giving the two charges in favor of appellees and in refusing each of the charges

requested by appellants.—Code of 1886, § § 2614, 2626 3 Brick. Dig., 17, § § 29, 30, 31, 32, 33, 34; *Torrey v. Forbes*, 94 Ala. 135; *Murray v. Hoyle*, 92 Ala. 559; *Black v. Tenn. C., I & R. R. Co.*, 93 Ala. 109.

A. H. MERRILL, *contra*.—The right of the widow under section 1900 of the Code to retain the possession of the dwelling house where the husband most usually resided next before his death, is superior to that of the heirs or administrator. She is entitled not only to the possession but to the rents, and if such rents are appropriated by another she can sue for and recover them. She can hold possession indefinitely, as long as she lives, unless her dower is assigned, and the heirs can not oust her.—*Barber v. Williams*, 74 Ala. 331; *Oakley v. Oakley*, 30 Ala. 131; *Reeves v. Brooks*, 80 Ala. 26; *Clancy v. Stephens*, 92 Ala. 577; *Gafford v. Strauss*, 89 Ala. 283. The possession of Phoebe A. Wellborn being rightful, from the death of her husband up to the time of her own death, her possession could not be adverse to the heirs of Lycurgus Wellborn; her possession was in legal effect their possession, and the statutes of limitations did not run in her favor. If she had continued in possession for fifty years, there would be no bar against the heirs recovering from her administrator.—*Pickett v. Pope*, 74 Ala. 122.

The tax deed which is set up for color of title is void for uncertainty, as it merely describes the lot as "one house and lot in Eufaula." Even if the deed had correctly described the lot she could not make her possession adverse, especially when the facts are, as the bill of exceptions shows, that the heirs had no knowledge or notice of such intended adverse holding, or that she held possession except as the widow of Lycurgus Wellborn. She being in the rightful possession could not make it adverse to the heirs, without giving them notice, even if she could have done so in that way.

The marriage of Phoebe A. Wellborn to Junius Jordan did not affect her quarantine, or her right to the possession of the lot.—*Shelton v. Carrol*, 16 Ala. 148.

The exemptions of Phoebe A. Wellborn have no bearing on the case. The half interest in the lot exceeded in value five hundred dollars, and there was no selection or setting apart of the homestead, or any action taken

[Foy v. Wellborn.]

looking to that result, which was necessary to make a valid homestead.—*Clancy v. Stephens*, 92 Ala. 577.

BRICKELL, C. J.—This was a statutory real action in the nature of ejectment, instituted by the appellees, the heirs at law of Lycurgus Wellborn, to recover the possession of a half of a lot situate in the city of Eufaula. By consent, the defendants, not pleading the general issue of not guilty, which would have included all defenses, not matter *puis darrien continuance*, interposed three special pleas—the statute of limitations of twenty years; the statute of limitations of ten years; adverse possession of ten years.

The facts, as shown by the record, are, that the ancestor of the plaintiffs died in March, 1872, in possession of the land in controversy, occupying it as a homestead, and his widow succeeded to the possession. There was no administration on his estate, and no assignment of dower to the widow. Soon thereafter, the widow removed from the land, renting or leasing it, and she continued to rent or lease it until her death in 1892. The ancestor died not leaving children, and the plaintiffs, the children of a deceased brother, were his only heirs at law. In 1877, the widow married Junius Jordan, whom she survived. In 1875, she obtained a tax deed for the land, which was immediately recorded, in which the premises were described as "one house and lot in the city of Eufaula." During all her possession, the widow claimed the premises as her own, but the evidence tended to show that the plaintiffs had no notice or knowledge that she claimed possession otherwise than as widow. The value of the premises at the death of the ancestor was variously estimated by the witnesses at from $500 to $900. After the death of the widow her administrator entered into possession and rented the lands to his co-defendant.

The court instructed the jury, that "if the jury believe the evidence, then the statute of limitations has no application in this case, and cannot be set up by the defendants." Further, that "if the jury believe from the evidence that the value of the half interest in said lot of land owned by said Lycurgus Wellborn at the time of his death was more than five hundred dollars, and that plaintiffs are the only heirs of said Wellborn, then they

are entitled to recover in this suit." The defendants requested the following charges, which were refused: (1.) "If the jury believe the evidence in this case, they must find a verdict for the defendants." (2.) "If the jury are reasonably satisfied from the evidence, that in March, 1872, when Mr. Wellborn died, his widow, the defendant's intestate, was left in possession of the land sued for, upon which she and her husband resided, and that she occupied and held said land for more than twenty years, claiming it as her property, then your verdict will be for the defendants." The charges given and refused form the matter of the assignment of errors.

1. The right of a widow and minor children to an exemption of a homestead, is governed by the law of force at the time of the death of the husband and father.— *Taylor v. Taylor,* 53 Ala. 135; *Rottenberry v. Pipes, Ib.* 447; *Bell v. Hall,* 76 Ala. 546. The statute of force conferring the exemption, at the death of the ancestor, was the act of February 8, 1872, (Pamph. Acts, 1871-72, p. 91), which limited the value of the homestead to a sum not exceeding five hundred dollars. In *Ogbourne v. Ogbourne,* 60 Ala. 616, this statute was construed as operating a repeal of all former statutes conferring exemptions on a widow and minor children, or either of them, and while in existence, constituting the only law having relation to the subject. If, as is hypothesized in the second instruction given the jury, the value of the premises at the death of the ancestor, exceeded five hundred dollars, the widow could not have asserted any just claim to them, as exempt to her from administration. Nor is there any evidence that during her possession, she ever claimed the premises as exempt, nor any fact which would authorize a reference of the possession to such claim.

2. The statute confers on a widow the right to retain, free from the payment of rent, possession of the dwelling house, where her husband most usually resided next before his death, until her dower is assigned her.—Code of 1886, § 1900. It is to this statutory right, the possession of the widow, a mere continuance of the possession of the deceased husband, must be referred; and however long the possession may have been continued, it was without the elements or constituents of a possession hostile and adverse to the heirs of the husband.—*Sherwood v. Baker,*

24 Am. St. 399, and authorities cited; *Hannon v. Houni-han*, 85 Va. 429; *Robinson v. Allison*, 97 Ala. 596. Her removal from and renting the premises worked no change in the nature and character of her possession. In *Inge v. Murphy*, 14 Ala. 291, it was said by DARGAN, J., that it could not have been "the object of the statute to coerce her to remain in person on the premises; or, rather, to make her title dependent on that condition, for it may be, that she could only derive a support from the premises by renting them; and to hold that the mere removing from the premises, defeats this right, might in many instances defeat the very intent of the statute, which is a provision for the widow until her dower is set apart to her." Nor was the nature and character of the possession changed or affected by the subsequent marriage of the widow. In *Shelton v. Carrol*, 16 Ala. 153, it was said by CHILTON, J.: "We have been unable to find any express adjudication upon this point by any of the courts of our sister States; but the cases are numerous where the husband has shared with his wife this humane provision of the law, and the fact of so general an acquiescence in her right is persuasive at least to show that her subsequent marriage does not work a forfeiture. It is but a statutory substitute for dower until it is assigned her, and if the subsequent marriage should work a forfeiture of the one, for the same reason the other should be forfeited also. No one, however, would contend that dower proper would be forfeited for such cause." As the removal from and renting the premises, instead of remaining in actual occupancy, nor her subsequent marriage, worked a forfeiture of her quarantine, neither afforded the heirs a cause of action against her for the recovery of the premises; they were in subordination, not in hostility to their title as reversioners. It is true, the heirs could have terminated her quarantine, by having dower assigned; but there was no duty or obligation to her, resting upon them to terminate it; and neither she nor those claiming in privity with her, can impute *laches* to them for not having terminated it; for acquiescence in that which was of mere favor or grace to her, subjected her to no injury.—*Fischer v. Stickmann*, 125 Mo. 178; *Null v. Howell*, 111 Ib. 278; *Brown v. Moore*, 74 Ib. 633. In *Null v. Howell*, *supra*, it was said: "The widow remains in the mansion house and occupies the

[Foy v. Wellborn.]

plantation by the sufferance of the heir or those claiming under him. Her possession is in no sense hostile or adverse to either. Forbearance on the part of the heir to terminate the quarantine rights of the widow, has been properly commended by the courts.'' The heirs seeking a recovery of the premises, are not lineal descendants of the deceased husband; they are collateral heirs, and it may be matter of commendation that they were unwilling to disturb the possession of the widow during her life. Not disturbing it, her possession was essentially permissive, and will be regarded as so continuing, unless disclaimed by declarations or acts unmistakably hostile, the equivalent of an abandonment or termination of the quarantine, of which the heirs had notice or knowledge, or which were so open and notorious, that notice or knowledge must be imputed to them.

The evidence imports no more than that the widow claimed the premises as her own, and in 1875 received that which is denominated as a tax deed for them under which she claimed, and which she caused to be recorded. There was nothing in all her open, visible conduct, indicating that her possession was not in subordination to the ulterior estate of the heirs, unless it be the registration of the tax deed. The deed describes the premises it was intended to convey as a ''house and lot in the city of Eufaula;'' a description as applicable to any other house and lot in the city as to the premises in controversy; and if its registration could be regarded as notice to the heirs of an adverse claim to these premises, it could equally operate as notice to every other owner of a house and lot in the city, of the adverse claim of the widow to such premises; a proposition for which no one will contend, or will assert. The object of all registration is notice, and of consequence it is necessary that the description of the premises in conveyances of real estate be reasonably certain, identifying and distinguishing it.—1 Devlin on Deeds, 650. It would be a harsh doctrine, converting the statute of limitation into ''a statute for the encouragement of fraud,'' if tenants of particular estates, or tenants having but a limited or qualified interest, or holding by mere sufferance or permission, could without the knowledge of the true owners—without notice to them of any facts putting them on inquiry—convert their possessions into adversary possessions, by mere claim of

title, which the statute of limitations will protect. *Hannon v. Hounihan*, 85 Va. 429; *Kirk v. Smith*, 9 Wheat. 288.

The first charge given by the court below was correct—there was no room for the application of the statute of limitations. This conclusion renders the refusal of the charges requested free from error. Let the judgment be affirmed.

Affirmed.