69 So.2d 847

**WHITE et al.**

v.

**WILLIAMS et al.**

I Div. 499.

Supreme Court of Alabama.

Jan. 14, 1954.

A. S. Johnson and W. Johnson McCall, Thomasville, Paul S. Jones, Grove Hill, for appellants.

Adams & Gillmore, Grove Hill, and Taylor, Higgins, Windham & Perdue, Birmingham, for appellees.

CLAYTON, Justice.

This is an action in ejectment by the heirs of David H. White against the personal representatives and general devisees of Julia A. White, concerning certain property in Thomasville, Alabama, referred to as the White Hotel property. David H. White and Julia A. White were husband and wife, living in and operating the White Hotel at the death of Mr. White in 1923. Mr. White died intestate and without issue. Mrs. White continued to occupy the property and operate the hotel either in person or through tenants until her death in 1948. It is un-

disputed that the record title to the property is in the name of D. H. White; nor is it disputed that Mrs. White enjoyed continuous possession of the property from Mr. White's death until her own. The case for those claiming under Mrs. White depends upon whether or not her possession since 1923 perfected title in her by prescription or adverse possession. The property involved consists of about one-half of Block D upon which was located the White Hotel and a small house to the rear of it.

There was no administration upon the estate of Mr. White nor was homestead or dower ever set apart to Mrs. White. The actions of Mrs. White, which are asserted by those claiming under her as the basis of their claim to present ownership, are substantially as follows: After Mr. White's death, she sold forty or fifty cattle and paid a note and mortgage executed by Mr. White and secured by them; she paid off a mortgage on the White Hotel property which had been executed by Mr. White; she paid a number of notes and accounts owed by Mr. White at his death; she tore down a small house which was located on the White Hotel lot and used the material therefrom in building another house on a lot owned by her individually; she built a small house and shop on a part of the White Hotel lot. In addition, there was some evidence of her having paid some taxes on the property in the testimony of her sister, Mrs. McCoy. Mrs. McCoy was one of the general beneficiaries, under the last will and testament of Mrs. White, which was executed in 1947 and admitted to probate in 1949. This will makes no specific mention of the White Hotel property. It was also shown that Mrs. White, in 1939, executed a will by which she would have devised the hotel property to some of her blood kin, but this will was not her last will and testament. Furthermore, it was not shown that the fact of the execution of this will was ever known or suspected by any of the heirs of Mr. White until the trial of this case. Several witnesses who were interested in the outcome of the suit testified that Mrs. White had made statements to the effect that the hotel property would go to the heirs of Mr. White after her death, that she only owned a life estate in the hotel property, etc.. Also, one or more disinterested witnesses testified that Mrs. White made similar statements in 1938 or 1939, and on other occasions as late as 1948. Conversely, several of the beneficiaries under Mrs. White's will testified that it was common knowledge that Mrs. White claimed to own the hotel all the time, that it was their impression that she claimed to own the hotel, and one of her brothers testified that he knew that one of Mr. White's heirs knew that she claimed to own the hotel.

A decision in the case depends upon the answers to the following questions: Did Mrs. White's possession at any time become hostile to the heirs of Mr. White? Did they have knowledge or notice of the hostile character of this possession, or was notice or knowledge imputed to them? And, did this hostile possession continue for the prescriptive period of twenty years, or was it of such character and duration as to bring it within the comprehension of our adverse possession statute—Section 828, Title 7, Code of Alabama 1940?

The able trial judge very properly submitted to the jury for determination the question as to whether or not Mrs. White's control of the property and exercise of dominion over it, subsequent to the death of her husband in 1923, was of such character as to perfect legal title in her by possession which was adverse to the heirs of Mr. White. Mobile & G. R. Co. v. Rutherford, 184 Ala. 204, 63 So. 1003; Hodges v. Sanderson, 213 Ala. 563, 105 So. 652.

Our statute on adverse possession, Title 7, Section 828, is as follows:

"§ 828. (6069) (2830) (1541–1546) Adverse possession, etc.—Adverse possession cannot confer or defeat title to land unless the party setting it up shall show that a deed or other color of title purporting to convey title to him has been duly recorded in the office of the judge of probate of the county in which the land lies for ten years before the commencement of the action; or unless he and those through whom he claims shall have annually listed the land for

taxation in the proper county for ten years prior to the commencement of the action, if the land is subject to taxation; or, unless he derives title by descent cast, or devise from a predecessor in the title who was in possession of the land. * * *"

██ Mrs. White's original possession ·of the property is presumed to have been under her quarantine rights. Branford v. Shirley, 241 Ala. 314, 316, 2 So.2d 403. She was entitled to retain this possession by virtue of such rights until such time as her homestead and dower might be allotted to her. Section 7437, Code of 1923, Code 1940, Tit. 34, § 50.

"We recognize the rule that a widow so circumstanced may acquire title by adverse possession." Branford v. Shirley, supra [241 Ala. 314, 2 So.2d 405].

"The theory upon which adverse possession becomes a perfect title is that the true owner has by his own fault and neglect failed to assert his right against the hostile holding for the full period of the statute." Lecroix v. Malone, 157 Ala. 434, 441, 47 So. 725, 728.

However, it has been declared by this ·court that "All presumptions and intendments are favorable to the title, and possessions are not presumed to be hostile, but rather in subordination to it." Dothard v. Denson, 72 Ala. 541, 544.

██ The burden of proving possession adverse rests upon the party asserting it. Dothard v. Denson, supra.

██ It is also held that the doctrine of prescription does not apply to cases where possession is permissive or in recognition of title. Kidd v. Browne, 200 Ala. 299, 76 So. 65. The theory of title by adverse possession is based on the neglect of the true owner to assert his rights against a hostile possessor for the period of limitation, and consequently a permissive possession does not ripen into title unless there has been such a repudiation of the permissive possession as to afford notice of an adverse claim. 2 C.J.S., Adverse Possession, § 87, p. 641, Smith v. Collier, 210 Ala. 23, 97 So. 101, Lecroix v. Malone, supra. It is further said that limitations begin to run from the date of notice of hostility but are not operative before hostility is shown. 2 C.J.S., Adverse Possession, § 87, p. 641. Whether the possession was with the intention of claiming title is generally held to be a question for the jury. Mobile & G. R. Co. v. Rutherford, 184 Ala. 204, 63 So. 1003; Hodges v. Sanderson, 213 Ala. 563, 105 So. 652.

██ While acts, such as are usually done or performed only by the owner, or one asserting ownership, are legal evidence to go before the jury on the question of adverse holding, or of asserted claim of right, they are still only evidence to be weighed against the other evidence. They are not the equivalent of a claim of right. The latter is a conclusion of fact, to be found, or not found, by the jury; the former is only testimony tending to prove such fact. Humes v. Bernstein, 72 Ala. 546, 556.

██ In the absence of a clear positive and continuous disclaimer and disavowal of the title of the true owner brought home to the latter's knowledge a permissive occupant cannot change his possession into adverse title no matter how long possession may be continued. 2 C.J.S., Adverse Possession, § 87, p. 642; Lay v. Fuller, 178 Ala. 375, 59 So. 609.

To change a permissive or otherwise nonhostile possession into one that is hostile, there must be either actual notice of the hostile claim or acts or declarations of hostility so manifest and notorious that actual notice will be presumed. 2 C.J.S., Adverse Possession, § 87, p. 642; Dothard v. Denson, 72 Ala. 541.

██ It is also axiomatic that "the possession of a widow under her quarantine right is not adverse". St. Clair Springs Hotel Co. v. Balcomb, 215 Ala. 12, 14, 108 So. 858, Robinson v. Allison, 124 Ala. 325, 27 So. 461.

This court held in the case of Trufant v. White & Co., 99 Ala. 526, 535, 13 So. 83, 86:

"* * * Where there are no relations between the owner and the party in possession,—nothing upon which the possession can be referred to the owner's right,—he is presumed to know of its wrongful character, knowing, as he must, of the fact of possession; but where a relation does exist upon which the possession is referable to the title, the holder of that title is justified in assuming that the possession is subordinate thereto, and held in recognition thereof, until he knows to the contrary. No kind or degree of actual hostility will of itself convert such a permissive into an adverse possession; no sort of claim of ownership on the part of the party in possession will of itself have this effect. And while it may be open to the jury in some cases to find from the circumstances of the possession that the owner had notice of its hostile and exclusive character, no exclusiveness of possession, no hostility, no claim of right antagonistic to the title, will necessarily in any case take the place of direct proof of knowledge on the part of the owner that the possession is no longer held in subserviency to him. At most, in any case, the circumstances of hostility, exclusiveness, and claim of right are only for the jury to consider as tending to show knowledge on the part of the owner; the argument being that the circumstances of the possession were such as that he must have known them, and from them, that the possession was no longer held under him, and in recognition of his title. Woodstock Iron Co. v. Roberts, 87 Ala. 436, [6 So. 349]; Burrus v. Meadors, 90 Ala. 140, 7 So. 469; Baucum v. George, 65 Ala. 259; [East Tennessee, Virginia & G.] Ry. Co. v. Davis, 91 Ala. [615] 619, 8 So. 349; Bernstein v. Humes, 78 Ala. [134] 142; DeJarnette v. McDaniel, 93 Ala. 215, 9 So. 570."

A clear, concise statement of the law, as applied to the case before us, is contained in Foy v. Wellborn, 112 Ala. 160, 166, 20 So. 604, 605:

"* * *: 'The widow remains in the mansion house and occupies the plantation by the sufferance of the heir, or those claiming under him. Her possession is in no sense hostile or adverse to either. * * *.' * * *. Not disturbing it, her possession was essentially permissive, and will be regarded as so continuing, unless disclaimed by declarations or acts unmistakably hostile, —*the equivalent of an abandonment or termination of the quarantine,* of which the heirs had notice or knowledge, or which were so open and notorious, that notice or knowledge must be imputed to them." (Emphasis supplied.)

The same holding was expressed in different words in the later case of Bank of Columbia v. McElroy, 231 Ala. 454, 457, 458, 165 So. 105, 108, as follows:

"The widow was entitled to at least a life estate, and section 7437, Code 1923, conferred on her the quarantine rights of possession and enjoyment until her dower was assigned. She was, therefore, in the circumstances shown by the evidence entitled to the exclusive possession and enjoyment of the homestead, of which her husband died seized and possessed, until her dower and homestead rights were adjudicated and set apart; and in the absence of facts showing that she openly asserted a hostile title, her possession was not adverse to the remaindermen. * * *"

Bearing on the question of what acts and declarations of the widow amount to a change from a state of permissive possession to one of hostility, our cases have held: "We need not state any affirmative rule as to what, on the part of the widow having such right (quarantine), will convert her presumptively subordinate possession into one adverse to the title. Doubtless a divestiture of her dower right, as by a release to the heir or tenant, or other act *amounting to a relinquishment of a dower, brought to the notice of the legal owner,* would enable her thereafter to set up a possession which would be so adverse, and to perfect and prove ownership thereunder according to the usual rules. But, *so long as the right of quarantine accompanies her possession, it excludes the owner's right to the posses-*

189

*sion, and is sufficient to defeat any action he might bring therefor.* While such is the status of the parties, no mere claim or assertion of ownership, however often and openly made, would start the statute of limitations to run against the owner, to whom the right of entry and the cause of action has not accrued." [Emphasis supplied.] Robinson v. Allison, 124 Ala. 325, 329, 330, 27 So. 461, 463, and cases cited in Bishop v. Johnson, 242 Ala. 551, 7 So.2d 281.

■ It has also been said that an assertion of claim of ownership by effort to devise by will or anything that the widow might have said in the making of a will setting up a claim of ownership would be alone and of itself unavailing to start the running of the statute against the owner. Allison v. Robinson, 136 Ala. 434, 34 So. 966; Martin v. Long, 200 Ala. 210, 75 So. 968; Edwards v. Bender, 121 Ala. 77, 25 So. 1010.

■ Declarations of one in possession that he had no title or that he did not claim title, whether his possession was or not by permission of the true owner, are evidence that his possession was not adverse. Dothard v. Denson, supra; Humes v. Bernstein, supra.

■ The foregoing will dispose of those assignments of error which were based upon what was in effect refusal of the affirmative charge for the appellants. Also, the first seven assignments of error dealing with the admission of evidence in regard to the payment by Mrs. White of notes, mortgages and accounts owed by Mr. White, are without merit. They are all matters which might be considered by the jury. Humes v. Bernstein, supra. Moreover, written charge Number 21, given at the request of the plaintiffs, removed any possibility of harm to the appellants by their admission. Likewise, the admission of evidence that Mrs. White had executed a will in 1939 by which she would have devised the property in question was a circumstance for the jury's consideration, under the adequate instructions given by the court as to it. Plaintiffs' charge Number 10 was refused to the plaintiffs without error for the reason that the charge omitted acts and

declarations so open and notorious that notice or knowledge must be imputed to the heirs. Foy v. Wellborn, supra. For the same reason plaintiffs' charge Number 13 and plaintiffs' charge B were refused without error. Written charge Number 2, given at the request of the defendants, was under the circumstances of the particular case free from error.

■ Appellants assign as error the following quoted portion of the court's oral charge, to the giving of which the plaintiffs did duly and legally except: "I charge you, Gentlemen of the Jury, that if Julia A. White claimed this land for ten years as her property, adversely to everyone that that title or claim of ownership would ripen into title, after a period of ten years, provided in this case, that claim of adverse possession was brought home to the heirs of David H. White." This part of the charge fails to include the requirement of a deed or other color of title, or the annual listing of the land for taxation for ten years, or the derivation of title by descent cast, or devise from a predecessor who was in possession of the land. It might be claimed by appellees that Julia A. White had met the requirements of Section 6069, Code of 1923, Section 828, Title 7, Code of 1940, in that she claimed the land by "descent cast". But that has a distinct technical meaning when so used. It means that when one dies in possession of land and possession is continued by his heirs, this possession is under color of title although the ancestor had not even color of title. 2 C.J. S., Adverse Possession § 80(b), p. 623, 2 C. J. 198, § 399. A widow is not an heir of her deceased husband. 29 C.J. 301, § 16. She has special statutory rights in his lands. At common law she had a dower interest. She did not obtain any title to the land by descent cast from her husband. 26 C.J.S., Descent and Distribution, § 49, p. 1061. The evidence did not authorize the submission to the jury of the benefits by appellees of the 10 years statute. For this reason, we are forced to hold that the cause must be reversed.

Counsel for both appellants and appellees in briefs assume the widow's right to quar-

190

antine in the property involved. Accordingly, we so treat the matter here. What effect, if any, that might have upon the case at bar, we do not here decide, but in view of the fact that a new trial is to be held, we call attention to a line of cases dealing with the question of a hotel as the homestead of a person occupying it with his family and conducting a business in it. Garrett v. Jones, 95 Ala. 96, 100, 10 So. 702; Turner v. Turner, 107 Ala. 465, 470, 18 So. 210; Phillips v. Norris, 222 Ala. 603, 133 So. 697; Bell v. Anniston Hardware Co., 114 Ala. 341, 21 So. 414.

Conduct of the jury, upon which are predicated assignments of error, are not likely to happen on another trial, and for that reason are not here considered.

For the reason stated, the cause is reversed and remanded for another trial.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.