HEFLIN, Chief Justice.
This appeal involves a boundary line dispute between adjoining and coterminous land owners. The plaintiffs-appellees, Clarence and Margie Anderson, filed a complaint asking the circuit court to decree that they were the legal title holders to certain described land. The defendants- appellants, Lambert and Larcille Atkinson, answered the complaint in part by asserting a claim to 5.1 acres of land described in the complaint by prescription or alternatively by adverse possession. Prior to trial, a court ordered survey was made. Testimony was taken ore tenus before the trial court and the court found in favor of the Ander-sons. In the trial court’s final decree the findings of fact included the following:
“3. That the plaintiffs [Andersons] have a good and valid claim of title to the S V2 of NE Vi of NW Vi lying East of the Highway; S V2 of NW V2 [sic] of NE Vi and NE Vi of NE Vi, Section 24, Township 15 South, Range 13 West, Fayette County, Alabama, and
“That the defendants [Atkinsons] have a good claim of title to the N V2 of NW Vi and [sic] NE Vi and N V2 of NE Vi of NW Vi lying East of the Highway, Section 24, Township 15 South, Range 13 West, Fa-yette County, Alabama.
“4. That neither the defendants nor their predecessors in title have any title or color of title to the lands of the plaintiffs’ and that neither the defendants nor their *724 predecessors in title have ever assessed for taxation or paid taxes on the land of the plaintiffs’.
* * * * * *
“7. That the fence (one of the wire fences running East and West) which defendants claim to be the true East and West line between the parties, is a meandering fence built by a prior owner who owned both the lands of plaintiffs and defendants before a division thereof was made.
“8. That the survey made by Mr. W. G. Mitchum, a licensed land surveyor * * correctly represents and depicts the true and correct boundary line between the property of the parties.
“9. That part of the NE Vi of the NE 14 lying West of branch was used by the defendants and their predecessors in title for watering of their stock with the permission of the then owner of said 40; and when defendant’s predecessors in title laid claim thereto the then owner had it surveyed and the corners put up in the presence of defendant’s predecessor in title who acquiesced in said survey.
“10. That defendants have never been in the actual, open, peaceable, notorious exclusive and continuous possession of any of the lands owned by the plaintiffs.”
The Andersons’ parcel of land contains approximately 82 acres and resembles the letter “T” lying on its side with the head of the “T” pointing East. The Atkinsons’ land is north of the Andersons’ land and lies in the crook of the “T," such that there are two common boundary lines with the An-dersons. Both of the boundaries were in question in the trial below. The amount of land under dispute along the latitudinal boundary line, which constitutes the southern boundary of the Atkinsons’ land, comprised 1.5 acres, while the longitudinal boundary line dispute involved 3.6 acres. These two parcels will be treated separately here with the 1.5-acre tract designated tract “1” and the 3.6-acre tract designated tract “2.”
The Andersons acquired title to the property which they contend includes the 1.5 acres in tract 1 from Mrs. Anderson’s mother, Mrs. Hughes, in 1968, who had acquired title from Mr. and Mrs. Bobo. The Bobos received title from one Jim Dowd. In 1974, Clarence Anderson received title to the land which involves tract 2 from Mr. and Mrs. Musgrove who had acquired the property in 1955 through the Will of Mrs. Musgrove’s father Tom McConnell. Tom McConnell’s ownership traces back to 1928.
The Atkinsons acquired a remainder interest in their property in 1955 from Mrs. Atkinson’s parents, the Stoughs, who retained a life interest in the property. Mr. Stough acquired his title to the property in 1944 from the Bobos, who had received title from Mr. and Mrs. Moore in 1944, who in turn, acquired their title from Jim Dowd in 1943.
At the time this action was commenced Mr. Stough was deceased and Mrs. Stough was still living and exercising her life estate by residing on the property. The At-kinsons took up residence on the property in 1971 apparently with the approval of Mrs. Stough because they owned no present pos-sessory interest in the property. For the sake of simplification this property will be described as that of the Atkinsons, although it is recognized they have a future interest.
The Atkinsons contend that the latitudinal boundary which affects tract 1 is a barbed wire fence which they claimed was put up by Mr. Stough in 1944. The Atkin-sons also contend that the longitudinal boundary is an old barbed wire fence and that such fence is the existing boundary of tract 2. Both fences are rather crooked because a substantial portion of each line is made up of strands of wire nailed to trees which causes the fence to zig-zag. Testimony at trial was that both of these fences were in a state of disrepair when the litigation began.
The Andersons contend that the boundaries are the government survey lines as laid out by Mr. W. G. Mitchum in his survey just prior to trial. As pointed out earlier, the trial court established the boundaries as being the government survey lines.
*725 The Atkinsons argue that the judgment of the trial court, that they have not gained title to the disputed land by adverse possession or by prescription, is unsupported by the weight of the evidence and is also contrary to the law of adverse possession.
In boundary dispute cases between coterminous land owners the evidentiary prerequisites of adverse possession as specified in Title 7, § 828, Alabama Code of 1940 (Recompiled 1958) are not controlling. In Sylvest v. Stowers, 276 Ala. 695, 166 So.2d 423 (1964), this court enunciated the requirements needed to prove adverse possession by a coterminous land owner in the following manner:
“If a coterminous landowner holds actual possession of a disputed strip under a claim of right openly and exclusively for a continuous period of ten years, believing that he is holding to the true line, he thereby acquires title up to that line, even though the belief as to the correct location originated in a mistake, and it is immaterial what he might or might not have claimed had he known he was mistaken. * * *” 276 Ala. 695, 697, 166 So.2d 423, 426 (1964).
Tract 1 in this case is in the shape of an elongated right triangle with the closest point between the two disputed boundary lines measuring 4' and the greatest distance measuring 76' across. The boundary by the government survey line runs a distance of 1748.8'.
The Atkinsons presented testimony that Mr. Stough built a fence along this boundary in 1944 and that he exercised exclusive possession over the disputed 1.5 acres for over 10 years. They also presented testimony to the effect that this fence continued to be recognized as the boundary until 1974 when the Andersons started to construct a fence along the government survey line.
The Andersons presented evidence that at one time there were two barbed wire fences at or near the location of this disputed fence, which created a lane to give access for cattle to get to a branch. There was testimony which supported the contention that the fence claimed to have been built by Mr. Stough was actually one of the lane fences. Testimony was taken which indicated that these two fences were constructed by Mr. Dowd when he owned both of the parcels of land which are divided by this disputed boundary.
The trial court in its findings of fact number 7 concluded that the fence claimed by the Atkinsons to be the true boundary was not built by Mr. Stough but was in fact “a fence built by a prior owner who owned both the lands of plaintiffs and defendants.”
This court has on countless occasions stated that when a case is heard ore tenus by the trial court, that that court’s findings will, on appeal, be presumed to be correct and will not be altered unless plainly erroneous or manifestly unjust. See, e.g., Kjelstrom v. First National Bank of Montgomery, Ala., 335 So.2d 647 (1976), and the cases cited therein.
Under the evidence before this court and the authorities cited, it cannot be said that the trial court’s finding that the latitudinal boundary was the government survey line is plainly erroneous or manifestly unjust or that the trial court misapplied the law of adverse possession to these facts.
This opinion will next consider the disputed longitudinal boundary which affects tract 2. This parcel is also in the form of a right triangle with the closest point between the two disputed lines being 89' and the furthest distance being 348', with the government survey line running 736' and the barbed wire line running 804'.
Apparently the discrepancy as to the boundary of tract 2 arises from the presence of a branch which is enclosed by the barbed wire fence and runs the entire length of the parcel. The evidence regarding these boundaries and the use of tract 2 over the years was in conflict. The Atkin-sons contend that their predecessors in title have been in exclusive possession of this 3.6 acres for well over 10 years dating back to 1944 when Mr. Stough first acquired his land. They presented testimony that Mr. Stough maintained the fence in order to *726 allow his cattle to water at the branch and to graze on the available foliage. The At-kinsons also presented evidence that their predecessors in title, as well as themselves, had cut timber on tract 2 and that the Andersons and their predecessors in title had cut timber all the way up to the fence during the last 29 years but had never crossed the fence. Finally, there was testimony that the Andersons and their predecessors in title for the last 20 years were aware that there was a dispute as to the boundary line in this parcel and that all they did during this period was to have it surveyed twice.
The Andersons presented evidence that this fence was erected by agreement between Mr. Dowd (predecessor in title to the Stoughs) and Mr. McConnell (predecessor in title to the Andersons) so that Dowd’s cattle could water at the branch. Testimony was presented that at one time there were two barbed wire fences creating a lane (across tract 1) which ran easterly and opened into tract 2 allowing cattle to come onto tract 2 for water at the branch.
The trial court in its finding of fact number 9, which has been previously quoted, found that the Atkinsons and their predecessors in title had been allowed to use tract 2 by permission and thus could not acquire title by adverse possession. There was ample evidence presented to allow the trial court to conclude that the use of tract 2 on the part of the Atkinson’s predecessors in title was permissive. As noted previously the ore tenus rule prevents this court from altering the trial court’s findings where those findings are not clearly erroneous or manifestly unjust.
The conclusion of law reached by the trial court, that permissive use cannot ripen into adverse possession, is amply supported by case law developed by this court. See, e.g., Enterprise Lodge No. 352 of the Knights of Pythias, Inc. v. First Baptist Church of Evergreen, 292 Ala. 579, 298 So.2d 17 (1974); White v. Williams, 260 Ala. 182, 69 So.2d 847 (1954).
Accordingly, the trial court’s ruling that the government survey line constitutes the longitudinal boundary is due to be affirmed.
AFFIRMED.
MADDOX, FAULKNER, SHORES and BEATTY, JJ., concur.