[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 539 
This is an appeal by Defendants, the devisees of Millie Ballard Mitchell Berry, deceased, from a judgment declaring Plaintiffs/Appellees, heirs at law of Walter E. Mitchell, joint owners in fee of certain real property in DeKalb County, Alabama.
Walter E. Mitchell died on September 18, 1917, leaving no children; he was survived by his widow, Millie Ballard Mitchell.[1] At the time of his death, Walter Mitchell owned 69 2/3 acres of land in DeKalb County, Alabama, on which he and his wife, Millie, had resided. On November 19, 1917, 62 days after her husband's death, Mrs. Mitchell filed a petition for homestead exemption with the Probate Court of DeKalb County. In the petition, she sought to have her deceased husband's land set apart to her in fee simple. The petition alleged that the property was all of the land owned by Walter Mitchell at his death and that this property did not exceed 160 acres nor $2,000 in value.
On the same day as the filing of the petition, the probate court entered an order appointing appraisers of the estate. In that order, the probate court found the averments of the petition to be true and assumed jurisdiction of the homestead proceeding, stating that 60 days had elapsed since the death of Walter Mitchell without any administration on his estate. A report by the duly-appointed commissioners (appraisers) was filed with the probate court, stating that Walter Mitchell, at his death, owned 69 2/3 acres of land valued at $1,900. There was no finding by the appraisers, nor an adjudication by the court, that such land was all of the land owned by Walter Mitchell at his death. The probate court, upon these facts, issued a decree setting apart the property to Mrs. Mitchell as a homestead for life.
In May, 1974, Mrs. Mitchell died testate, leaving this property to the Appellants in this case. In 1976, Appellees, claiming to be the heirs at law of Walter Mitchell and joint owners in fee of the property in question, instituted this action to quiet title in the property.
The trial Court rendered judgment for the Plaintiffs/Appellees, finding that the probate court never acquired jurisdiction over the homestead proceedings because Mrs. Mitchell's petition failed to allege the necessary jurisdictional fact that 60 days had passed since the death of Walter Mitchell without any administration of his estate. The trial Court ruled that the probate court's decree was therefore void. The trial Court further found that Mrs. Mitchell took only a life interest in the property and that, upon her death, the heirs of Walter Mitchell, as remaindermen, became the owners in fee simple of the property. The Court also *Page 540 
ruled, as a matter of law, that Mrs. Mitchell could not enlarge her life interest in the property into a fee simple estate by adverse possession.[2]
Acknowledging that they can benefit only if Mrs. Mitchell obtained a fee simple title to the property sometime during her life, Appellants, as her devisees, advance two theories by which they contend Mrs. Mitchell obtained such title. First, they claim that a fee simple title vested in Mrs. Mitchell through the homestead proceeding in probate court because: 1) The probate court specifically found, in its order appointing appraisers, that 60 days had passed from the decedent's death without administration of his estate; and this despite the fact that Mrs. Mitchell's petition failed to make this necessary jurisdictional allegation; 2) the probate court appointed appraisers to appraise all the real and personal property of Walter Mitchell; thus, the appraisal, as returned, necessarily included all the property belonging to Walter Mitchell at his death; and this despite the fact that the commissioners' report and the court's final decree made no such specific finding; and 3) the probate court specifically found that the property was less than 160 acres and that the value was less than $2,000.
The Appellants would have us conclude, then, based on the findings of the probate court (as to the lapse of the 60-day period and the size and value of the property) and on the assumption that the appraisers did as ordered (i.e., found and reported on all of the property belonging to the decedent), that the homestead statute existing at the time of the probate proceedings operated automatically (i.e., by operation of law) to vest a fee simple title in Mrs. Mitchell.[3]
As their second and alternative argument in support of their contention that Mrs. Mitchell obtained a testamentary devisable fee, Appellants state: Assuming Mrs. Mitchell was not vested with a fee simple title by the probate proceeding, she obtained such title by adverse possession.
Appellees, on the other hand, contend that the failure of Mrs. Mitchell's petition to make necessary jurisdictional allegations cannot be cured by a finding of the probate court, citing Bank of Columbia v. McElroy, 231 Ala. 454, 165 So. 105
(1935). Therefore, Appellees contend, any finding or order of the probate court was void. Alternatively, Appellees assert: If the probate court did obtain jurisdiction in the homestead proceeding, it ruled properly in granting only a life estate.
In reply to Appellants' adverse possession argument, Appellees contend that, as a matter of law, Mrs. Mitchell could not acquire a fee by adverse possession against them as remaindermen.
We find it unnecessary to respond to the question whether the probate court obtained jurisdiction in the probate proceedings. Conceding the jurisdictional issue, we cannot escape the fact that the probate court made no judicial determination that the 69 2/3 acres was all of the real estate owned by the decedent as required under § 4198, Code of Alabama 1907, the statute which controlled vesting of a fee at that time. Nor can the law so assume from the fact that the commissioners were ordered "to appraise all" the decedent's property within the state.
Additionally, it was never determined by the probate court in the instant case whether the estate was insolvent. Under § 4198, Code of Alabama 1907, this was a prerequisite to the vesting of the fee simple of the homestead in a surviving widow.[4] Therefore, assuming jurisdiction was properly obtained, we hold the probate court was *Page 541 
correct in setting aside a homestead for life, rather than vesting a fee in the widow.
Alternatively, if the probate court was without jurisdiction, any order or decree it issued was void, leaving Mrs. Mitchell only her right of quarantine. Hays v. Lemoine, 156 Ala. 465,47 So. 97 (1908); Miller v. First National Bank, 194 Ala. 477,69 So. 916 (1915). Consequently, because Mrs. Mitchell did not obtain a fee in the probate proceeding, her devisees can benefit only if she acquired title by adverse possession; and, as we shall see, the standard for such acquisition is the same whether the widow possessed the property under her quarantine right or under her right to a homestead exemption.
Generally, a homestead is a life estate in the widow. Bryantv. Perryman, 213 Ala. 561, 105 So. 561 (1925). In contrast, quarantine is not an estate in land — only a right to use and occupy the dwelling house where the widow's deceased husband last lived and the land and buildings appurtenant thereto.Norton v. Norton, 94 Ala. 481, 10 So. 436 (1891); Jackson v.Bain, 74 Ala. 328 (1883). See, generally, Eugene Alston Ray, "Assignment of Dower in Alabama," 37 Ala. Lawyer 112 (1976). A widow, if entitled to dower, however, may hold possession to such property under her quarantine rights until her dower is assigned. Stiff v. Cobb, 126 Ala. 381, 28 So. 402 (1899); § 3824, Ala. Code 1907.
We find no distinction in the cases between a homestead life estate and possession under quarantine as to the standard of proof for adverse possession by a widow against her husband's heirs. It is generally held that possession by a widow of her deceased husband's property under dower, homestead, or quarantine right is not adverse to the husband's heirs. 3 Am.Jur.2d, Adverse Possession, § 235, p. 606; Bank of Columbiav. McElroy, supra; Stiff v. Cobb, supra; Johnson v. Oldham,126 Ala. 309, 28 So. 487 (1899); Woodstock Iron Co. v. Fullenwider,87 Ala. 584, 6 So. 197 (1888).
Keeping in mind the facts of the present case, it must be noted that this Court has specifically held that possession under such rights is not adverse even when held by the widow jointly with a second husband. Johnson v. Oldham, supra. This result is in accordance with the general rule that there can be no adverse possession by a life tenant against a remainderman.Duncan v. Johnson, 338 So.2d 1243 (Ala. 1976). Our cases consistently recognize that, as long as a widow is rightfully in possession of her husband's lands under her marital rights, her possession is not adverse to the heirs, even if she claims entire ownership. White v. Williams, 260 Ala. 182, 69 So.2d 847
(1954); Gindrat v. Western Railway of Alabama, 96 Ala. 162,11 So. 372 (1891).
We do not intend, however, to suggest that there are no circumstances where a widow can acquire title by holding adversely as against the husband's heirs. Where the widow gives up her dower rights, as by a release to the heirs, or other acts amounting to an unequivocal relinquishment of dower, and the legal owner receives notice of such fact, she can then establish an adverse holding and prove ownership under it according to the customary procedures and rules. White v.Williams, supra.
As a prerequisite to the widow's possession becoming adverse against the heirs of her husband, it has been held that she must repudiate the title of her husband and disavow any claim to such title and give notice of the disavowal, and that notice of the disavowal must be brought home to the heirs. Haynes v.Strange, 232 Ark. 374, 337 S.W.2d 661 (1960). A widow whose dower remains unassigned cannot acquire title by adverse possession as against the heirs simply by remaining in the possession of her husband's land. Mullan v. Bank of PascoCounty, 101 Fla. 1097, 133 So. 323 (1931); Lee v. Harris,188 Tenn. 373, 219 S.W.2d 892 (1949); 3 Am.Jur.2d, AdversePossession, § 235, p. 606. For a parallel rule in the context of co-tenants, see Tyson v. Jackson, 364 So.2d 1140 (Ala. 1978) [1978].
A widow who holds possession without color of title may obtain title by *Page 542 
adverse possession against the heirs if the occupancy is open, notorious, visible, and by acts which unmistakenly convey notice to the heirs of her hostile holding, in defiance of their title. Criswell v. Noble, 61 Misc. 483, 113 N.Y.S. 954
(1908), affirmed 134 App. Div. 994, 119 N.Y.S. 1122 (1909). It has been held in other jurisdictions that once the period of a widow's rightful possession of her deceased husband's property expires her possession under a claim of ownership will be adverse to the heirs. Niederhelman v. Niederhelman,336 S.W.2d 670 (Mo. 1960). In the present case, however, Mrs. Mitchell's possession would have properly continued until the time of her death under either her quarantine right or homestead right. For an excellent statement of the Alabama rule (where the factual context fails to show repudiation of title and notice of disavowal of any claim to such title), see Duncan v. Johnson,338 So.2d 1243 (Ala. 1976).
In Robinson v. Allison, 97 Ala. 596, 12 So. 382, 604 (1893), the Court held that, although a widow occupying the homesteadmay adversely possess against the owners of the interest in excess of her dower or homestead rights, mere possession under the facts there involved fell short of the elements required to vest a fee by adverse possession.
Later, in Hays v. Lemoine, supra, it was held by this Court that there could be adverse possession against the husband's heirs if the widow's possession, having begun in amity with the heirs, thereafter became hostile.
Finally, in Branford v. Shirley, 241 Ala. 314, 2 So.2d 403
(1941), the Court, although recognizing the Hays rule that a widow who was in possession of her deceased husband's land for more than 20 years could acquire title by adverse possession if such holding was adverse, held the evidence insufficient to prove the requisite elements of adverse possession.
In view of the foregoing principles, we conclude that the trial Court in the instant case was in error when it ruled, asa matter of law, that Mrs. Mitchell could not enlarge her life interest in the homestead into a fee simple under the doctrine of adverse possession. In so ruling the trial Court foreclosed consideration of this factual issue; and any such initial consideration would be improper at the appellate level.
Admittedly, the law casts a heavy burden on one seeking to establish acquisition of a fee interest by a life tenant through adverse possession. Indeed, unless the evidence convinces the trial Judge that Mrs. Berry's possession converted from one in amity with the heirs to one of hostility, amounting to a repudiation of her husband's title and disavowal of her life interest therein with notice of such disavowal to the heirs, no finding of adverse possession can be made. Nevertheless, the opportunity to meet this burden cannot be summarily denied.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
All the Justices concur.
[1] Mrs. Mitchell's husband by a second marriage, Tip Berry, also predeceased her. There were no children by this marriage.
[2] Although they specify this adverse ruling in the decree below as the issue presented for review, Appellants' brief also points out that the trial Court excluded certain proffered evidence material to this issue.
[3] If the premises for this argument are valid, the conclusion urged by Appellants is supported by case law. See Freeman v.Still, 257 Ala. 554, 59 So.2d 801 (1952).
[4] We hasten to point out that the insolvency prerequisite of the 1907 Code no longer obtains. See, § 6-10-62, Ala. Code 1975.