134 So.2d 764

Georgia ANITON et al.

v.

Nellie ROBINSON et al.

6 Div. 634.

Supreme Court of Alabama.

Nov. 16, 1961.

J. J. Cockrell, Birmingham, for appellants.

Johnson & Randall, Oneonta, for appel-
lees.

LAWSON, Justice.

The original bill was filed by the appellees for the sale of land for division of proceeds among alleged tenants in common and for other relief, including the cancellation of certain conveyances as clouds on appellees' title.

After demurrer was overruled the appellants filed an answer which was made a cross bill. The appellees answered the cross bill. The answer-cross bill was amended. The original bill was then amended. The answer-cross bill was again amended. The appellees answered the cross bill as last amended. The appellants, the respondents-cross complainants, then filed "Demurrer To Complaint As Last Amended," which was overruled.

Following a hearing wherein the testimony was taken ore tenus, the trial court denied the relief sought in the cross bill and dismissed it. The prayer of the original bill that the subject lands be sold for division was granted and the lands ordered sold.

The respondents-cross complainants have appealed to this court.

The assignments of error which are sufficiently argued in appellants' brief to warrant consideration by this court assert that the trial court erred in the following respects: (1) in overruling demurrer to the original bill; (2) in overruling "Demurrers to Complaint as Last Amended"; (3) in denying relief under the cross bill and dismissing it; and (4) in ordering the subject lands sold for division.

■ The demurrer to the original bill was addressed to the bill as a whole. The only grounds of that demurrer which are insisted upon in appellants' brief are those which take the point that the bill is without equity. So if any aspect of the bill asserts matter of equitable cognizance, the decree overruling the demurrer will be affirmed. Sellers v. Valenzuela, 249 Ala. 627, 32 So.2d 517; Cunningham v. Andress, 267 Ala. 407, 103 So.2d 722; Adams Supply Co. v. United States Fidelity & Guaranty Co., 265 Ala. 178, 90 So.2d 284; Shaddix v. Wilson, 261 Ala. 191, 73 So.2d 751.

The appellants insist that the argued grounds of demurrer should have been sustained for the reason that the bill shows on its face that the complainants are mere reversioners with no right or interest in the present use and enjoyment of the property, or to the proceeds in case of sale, and, hence, cannot compel partition or sale against the respondents, some of whom hold a life estate in the subject lands, according to the appellants' construction of the bill.

■ If the bill be so construed, that is, as showing that complainants own only a reversionary interest in the lands in controversy, the outstanding life estate is an obstacle or impediment in the way of assertion by complainants of their legal rights. Hence, they have the right to maintain this bill to remove the clouds from their title in reversion, although out of possession. Fies v. Rosser, 162 Ala. 504, 50 So. 287; Screws v. Wall, 203 Ala. 178, 82 So. 428; Baggett Mercantile Co. v. Vickery, 213 Ala. 427, 105 So. 207.

We hold, therefore, that the trial court did not err in overruling the general demurrer to the bill as a whole.

■ The argued grounds of the so-called "Demurrers to Complaint as Last Amended" were directed, not to the complaint as amended, but to appellees' answer to the cross bill. Demurrer will not lie to an answer to a bill in equity or to an answer to a cross bill. See Flowers v.

Auto Mutual Indemnity Co., 236 Ala. 30, 180 So. 705.

We hold that reversible error is not made to appear in connection with the court's action in overruling the so-called "Demurrers to Complaint as Last Amended."

■ We come now to consider the appellants' insistence that the trial court erred in denying relief under the cross bill and in dismissing it.

The subject lands were owned by Henry Clifton Aniton, who died intestate in 1948. He was survived by his wife, Georgia; by one brother, Boston; by two sisters, Nellie Robinson and Dora Coruthers; by seven nieces and nephews, children of his deceased brothers, Rafus and Greely; and by a grandnephew and two grandnieces, children of a deceased son of the deceased brother Rafus.

No children were born to Georgia and Henry Clifton Aniton.

The original bill was filed by the surviving sisters, Nellie Robinson and Dora Coruthers. Among the respondents to the original bill are Georgia Aniton, the widow, and one Emogene Aniton Smith, who came to live with Henry Clifton and Georgia Aniton when she was seven or eight years of age.

In their answer-cross bill the respondents alleged in effect that Emogene Aniton Smith is the adopted daughter of Henry Clifton Aniton and inherited all of the suit property subject to the dower rights of the widow, Georgia Aniton. The answer-cross bill prayed that the court so decree. There is no claim that Georgia has any homestead rights in the suit property. The amended answer-cross bill contained the prayer for specific performance of a contract to adopt Emogene Aniton Smith as the child and heir of Henry Clifton Aniton.

The trial court in the decree here under review denied the relief sought in the cross bill as amended and dismissed it, after observing:

"It is the judgment of the Court the evidence is insufficient to establish a contract to adopt which can and will be enforced in a court of equity.

"The details of what happened over thirty years ago, when the girl Emogene left her dying mother and began to make her home with Henry Clifton Aniton and wife Georgia Aniton, are somewhat obscure. Henry Clifton Aniton, the decedent, made no steps during his lifetime to adopt Emogene, and Georgia Aniton, as Administratrix, administered the estate of her deceased husband on the basis that Emogene was not an heir, and as late as 1957 recognized the title of the complainants and his other natural heirs as she dealt with the land, while Emogene sat silent for ten years after the death of Henry Clifton Aniton before asserting any claim as an heir in his estate. These courses of conduct are inconsistent with the claims now asserted by Georgia Aniton and Emogene."

Where, as here, the question was with respect to title to land and the statute of frauds was pleaded, this court has denied specific performance of an alleged oral contract concerning adoption. Marietta v. Faulkner, 220 Ala. 561, 126 So. 635, followed and applied in Olive v. Olive, 221 Ala. 697, 127 So. 915. See Benefield v. Faulkner, 248 Ala. 615, 29 So.2d 1; Luker v. Hyde, 253 Ala. 283, 45 So.2d 32; id., 260 Ala. 248, 69 So.2d 421. In Prince v. Prince, 194 Ala. 455, 69 So. 906, upon which counsel for appellants places so much emphasis, the statute of frauds was not pleaded.

In this case there was no written instrument introduced in evidence signed by the Anitons or either of them wherein it was agreed that Emogene was to come into their home and custody to be treated and

cared for as if she were their own child, as was the situation in Benefield v. Faulkner, supra.

The appellants did introduce in evidence a letter written by Henry Clifton Aniton to Emogene in 1946 which shows that the writer was extremely fond of Emogene. The letter contained this postscript: "When I am gone I [sic] you to have everything I got."

■ This letter, written many years after Emogene had married and moved away, cannot be said to be sufficient to warrant a decree of specific performance as prayed for in the amended cross bill. The burden was upon appellants to prove the contract by clear and satisfactory evidence. Luker v. Hyde, 260 Ala. 248, 69 So.2d 421. In our opinion they have not met this burden.

■ We have repeatedly held that where testimony was heard orally by the trial court, its finding of fact is given the same weight as a jury verdict and will not be disturbed here unless palpably wrong. Wiginton v. Milford, 271 Ala. 271, 122 So.2d 769.

Aside from any presumption, we are impressed from a careful reading of this record that the insistence that Emogene is the adopted child of Henry Clifton Aniton is but an afterthought.

As we have shown, Henry Clifton Aniton died in 1948. His estate was administered in the Probate Court of Blount County. The widow, Georgia Aniton, was appointed administratrix. In her petition for letters of administration filed on November 15, 1948, Georgia Aniton alleged that the heirs and distributees of Henry Clifton Aniton were herself, his brother and two sisters, and five nieces and nephews, all of whom were named. The nieces and nephews named are the children of the deceased brother Rafus. No mention was made of the two children of the deceased brother Greely nor of the three children of the deceased son of Rafus. Emogene Aniton Smith was not mentioned as an heir or distributee.

The order approving the final settlement of the administratrix was made and filed on November 12, 1949. It contains the statement that Henry Clifton Aniton was survived by no children.

It was not until 1958 that either Georgia Aniton or Emogene Aniton Smith asserted that the latter was the adopted daughter of the deceased. This position was not taken until after the appellees refused to convey to Georgia Aniton their interest in their brother's lands.

We are clear to the conclusion that the trial court was eminently correct in refusing to enter a decree of specific performance as prayed for in the amended cross bill and in dismissing it.

The appellants next insist that the trial court erred in ordering the suit property sold for division for the reason that the appellees, the complainants below, own only a reversionary interest without right to the present use and enjoyment. of the property or the proceeds thereof in case of sale.

■■ The rule seems to be well established that one who has a mere reversionary interest and has no right or interest in the present use or enjoyment of the land, or to the proceeds in case of sale, cannot compel partition against one owning an outstanding life estate in and to the entire property, since the right to partition land depends upon the actual or constructive possession of the land and the right to participate in the proceeds of a sale for such purpose. Fies v. Rosser, 162 Ala. 504, 50 So. 287; Letcher v. Allen, 180 Ala. 254, 60 So. 828; Shannon v. Ogletree, 202 Ala. 219, 80 So. 41; Street v. Watts, 202 Ala. 622, 81 So. 564; Chapman v. York, 208 Ala. 274, 94 So. 90; Etheredge v. Etheredge, 219 Ala. 660, 123 So. 48; Mizell v. Walley, 253 Ala. 302, 44 So. 2d 764; Compton v. Cook, 259 Ala. 256, 66 So.2d 176; Ganus v. Sullivan, 267 Ala. 16, 99 So.2d 204.

The appellees admit that upon the death of Henry Clifton Aniton, the widow, Georgia Aniton, was entitled to be endowed of one half of his lands—that is, a life estate

in one half of the lands of which he died seized and possessed.

They concede that no court has made an assignment of dower to Georgia Aniton, the widow.

They recognize the general rule to be that heirs cannot have partition pending the paramount right of the widow to quarantine, dower or homestead. Hamby v. Hamby, 165 Ala. 171, 51 So. 732; McAllister v. McAllister, 189 Ala. 220, 66 So. 462.

The appellees insist, however, that the several conveyances which have been made since the death of Henry Clifton Aniton affecting the lands which he owned at the time of his death operate to give appellees the right to have the lands here involved sold for division.

The first conveyance which affected the Henry Clifton Aniton lands following his death was executed on May 27, 1957. It was a warranty deed wherein the widow, Georgia Aniton; the surviving brother, Boston Aniton; and the surviving sisters, Nellie Robinson and Dora Coruthers, granted, bargained, sold and conveyed to Thomas E. Whited "all our right, title and interest in and to" approximately three and one-fourth acres.

The appellees having joined in that conveyance to Whited do not claim any interest in the land described therein and hence they do not seek its sale in this proceeding.

The next conveyance was a quitclaim deed executed on August 17, 1957, wherein "the undersigned heirs of H. C. Aniton" conveyed to the widow, Georgia Aniton, their "right, title, interest and claim" to all of the lands of which Henry Clifton Aniton died seized and possessed except the three and one-fourth acres covered by the deed to Thomas E. Whited. The "undersigned," that is, the grantors in the quitclaim deed to Georgia Aniton, were the surviving brother, Boston Aniton; the surviving children of the deceased brother Rafus; and the children of the deceased brother Greely. By this conveyance Georgia Aniton acquired fifty-one ninetieths of the reversion.

At this point the reversion of the Henry Clifton Aniton lands, except the three and one-fourth acres covered by the May, 1957, deed to Thomas E. Whited, was apparently owned thusly: fifty-one ninetieths by Georgia Aniton, eighteen ninetieths by Nellie Robinson, eighteen ninetieths by Dora Coruthers, one ninetieth by Emmett Aniton, Jr., one ninetieth by Eddie June Aniton Hughes, and one ninetieth by Emma Jean Aniton. The last three named persons are the children of the deceased son of Henry Clifton Aniton's deceased brother, Rafus Aniton.

On June 9, 1958, Emogene Aniton Smith for the first time took action indicating that she claimed to be the adopted daughter of Henry Clifton Aniton. On that date she joined with her husband and with Georgia Aniton in executing a warranty deed wherein the grantors purported to grant, bargain, sell and convey to Nathaniel Polk and wife, Ella Mae Polk, approximately forty acres of the Henry Clifton Aniton lands. The instrument contained this statement: "The above-named grantors are the surviving widow and daughter of H. C. Aniton, deceased, being the only surviving heirs-at-law of the said H. C. Aniton." The land covered by this conveyance will sometimes be referred to hereinafter as Tract A. The Polks later mortgaged Tract A to Georgia Aniton to secure a note in the amount of $900. The Polks were made respondents to the original bill and are among those persons who have appealed to this court.

On August 12, 1958, Emogene Aniton Smith, her husband, and Georgia Aniton executed a warranty deed wherein they purported to convey to Thomas E. Whited and Billy Whited approximately eighteen acres of the Henry Clifton Aniton land. This instrument, like the one purporting to convey the forty acres to the Polks, contained a statement to the effect that Georgia Aniton, the widow, and Emogene Aniton Smith were the only heirs at law of the said Henry Clifton Aniton. The eighteen acres covered by this instrument will be sometimes hereinafter referred to as Tract B. The

Whiteds were made respondents to the original bill and are also among those who have appealed to this court.

There is an eight-acre tract which has not been included in a conveyance since the death of Henry Clifton Aniton except in the quitclaim deed to Georgia Aniton. It is here involved and will be sometimes hereinafter referred to as Tract C.

As we have shown above, the trial court concluded that Emogene Aniton Smith was not the adopted daughter of Henry Clifton Aniton and that she had not established a contract to adopt, so it found in effect that the conveyances in which Emogene Aniton Smith and her husband had joined with Georgia Aniton as grantors operated to convey to the grantees therein no more than the interest which Georgia Aniton owned in the property described in the conveyances.

The trial court found that Tract A:

" * * * is owned by the following joint owners, with their interests as follows:

"Nathaniel Polk and Ella May Polk jointly own an undivided 51/90ths interest plus the life estate of Georgia Aniton in the balance, but subject to a mortgage to Georgia Aniton;

Dora Coruthers, 18/90ths,

Nellie Robinson, 18/90ths,

Emmett Aniton, Jr., 1/90th,

Eddie June Aniton Hughes, 1/90th,

Emma Jean Aniton, 1/90th,

with the interest of the last five owners being subject to the life estate of Georgia Aniton."

In regard to Tract B, the trial court found that it is owned by the following joint owners, with their interests as follows:

"Thomas E. Whited and Billy Whited jointly own an undivided 51/90ths, interest,

Dora Coruthers, 18/90ths,

Nellie Robinson, 18/90ths,

Emmett Aniton, Jr., 1/90th,

Eddie June Aniton Hughes, 1/90th,

Emma Jean Aniton, 1/90th."

As to Tract C, the trial court found that it is owned by the following joint owners, with their respective interests as follows:

"Georgia Aniton, 51/90ths,
Dora Coruthers, 18/90ths,
Nellie Robinson, 18/90ths,
Emmett Aniton, Jr., 1/90th,
Eddie June Aniton Hughes, 1/90th,
Emma Jean Aniton, 1/90th.

"The Court finds that Georgia Aniton has no dower interest in said Tract C."

The court further found that none of the tracts could be fairly and equitably divided or partitioned among the joint owners without a sale for division and, as shown above, ordered a sale.

In regard to Tract A, we understand that the court held that Georgia Aniton conveyed to the Polks an undivided fifty-one ninetieths interest in the reversion and a life estate in the entire forty acres. The reversionary interests owned by the complainants Nellie Robinson and Dora Coruthers and by the other three persons were held to be subject to the life estate of Georgia Aniton, which she conveyed to the Polks.

The trial court made no mention of a dower interest or life estate in connection with Tract B and expressly stated that Georgia Aniton had no dower interest in Tract C.

The conveyance of the widow's dower interest, before it is assigned, has different operation at law than in equity. The widow having no fixed, determinate estate in any specific part of the land until dower is allotted, her antecedent conveyance to a stranger passes no legal es-

tate and is inoperative at law; and when made to the terre-tenant operates in the nature of a release, or extinguishment of the right of dower. Until assigned, the widow's right to dower is an equity, of which a court of law does not take cognizance; but on the principle that an assignment of a right in action, though not assignable at law, will be protected in equity, a court of equity will uphold the widow's alienation of her dower interest to a stranger, and protect the right of the alienee, there being a valuable consideration paid, and the absence of fraud, imposition and undue advantage. These principles were declared in Reeves v. Brooks, 80 Ala. 26, and reaffirmed in Wilkinson v. Brandon, 92 Ala. 530, 9 So. 187.

■ Consequently, we cannot agree with the decree under review in the respect that it says that the Polks acquired from Georgia Aniton a life estate in Tract A or in any part of that tract. Under the deed from Georgia Aniton, the Polks acquired her interest in the fee and a right of action to have her dower interest allotted to them. Georgia Aniton had no life estate to convey to the Polks, for her dower had not been allotted.

■ We pause here to observe the difference between dower and the courtesy rights of the surviving husband. The latter is given a life estate in all of his deceased wife's realty. Section 12, Title 16, Code 1940. Not so in the case of the surviving wife. Sections 40 and 41, Title 34, Code 1940. As shown above, dower, before it is allotted, is in the nature of a right of action, and is not an interest or estate in land. Wilkinson v. Brandon, supra; Reeves v. Brooks, supra; Francis v. Sandlin, 150 Ala. 583, 43 So. 829. Because of this distinction between the widow's dower and the surviving husband's courtesy rights, the case of Mizell v. Walley, 253 Ala. 302, 44 So.2d 764, is not controlling here.

■ The question is presented as to whether it was proper to order Tract A sold for division even though the Polks do not have a life estate in the lands conveyed to them but, in equity, do have a right of action which when assigned could give them a life estate in at least a part of that tract.

We are of the opinion that as long as that right exists the complainants cannot be said to have a right to possession and hence it was error to order Tract A sold for division.

■ We do not understand that the right to have the dower interest allotted has been lost by virtue of the provisions of § 63, Title 34, Code 1940. See Quicksey v. Hall, 260 Ala. 162, 69 So.2d 698; Williams v. Anthony, 219 Ala. 98, 121 So. 89; Leddon v. Strickland, 218 Ala. 436, 118 So. 651.

■ The appellees, as heirs of Henry Clifton Aniton, are entitled to have allotted the dower interest held by the Polks so that the balance of the real estate may be disencumbered. Wilkinson v. Brandon, supra.

After remandment, if they so desire, the complainants below, the appellees here, may amend their bill so as to have the dower interest allotted out of Tract A if it is sufficient in area and value for that purpose.

When the dower interest has been so assigned, the remainder of the lands of which Henry Clifton Aniton died seized and possessed may then be sold for division of proceeds among the tenants in common.

We are of the opinion that the decree should be reversed in so far as it orders the three tracts of land sold for division, for we cannot say from this record that the dower interest can be carved from Tract A alone.

Affirmed in part and in part reversed and remanded.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.