Percy W. Marino and Vilai Marino appeal from a final judgment in favor of the plaintiffs, Angelina Smith, Senry Boler and Charlotte Douglas, in a suit in ejectment. We affirm.
Part of the testimony in this case was presented by deposition and part was presented ore tenus before a circuit judge. He recused himself before making a decision. This case was then assigned to another circuit judge, who took further ore tenus testimony. He failed to make a decision and this case was submitted to still another circuit judge on the depositions taken and the transcripts of testimony taken before the other judges.
Where the evidence was presented orally upon original submission, but the decree before this court for review was rendered by a judge who did not hear the testimony, the ore tenus rule does not apply, and it is the reviewing court's duty to consider the case de novo. McCulloch v. Roberts, 292 Ala. 451, 296 So.2d 163 (1974).
After considerable study of the record, we conclude that the judgment below is well founded. The following is a recital of the evidence as disclosed by the record: The land involved in this dispute is described as follows:
 "From the NW corner of Section 20, Township 5 South, Range 2 East, run East 100 rods; South 60 rods to the point of beginning; run East 20 rods; North 24 rods; West 20 rods; South 25 rods to the point of beginning, containing 3 acres more or less, and lying in Baldwin County, Alabama."
Herman Boler purchased the land in 1924 and he and his wife Liddie lived on it until his death in 1933. The couple had no children and the sole heirs of Herman Boler were his brother and two sisters. The plaintiffs are his brother Senry Boler, his sister Angelina Smith, and Charlotte Douglas, the daughter of his now deceased sister Susan Boler. Liddie continued to live on the property after Herman's death. A few years later she remarried and she and her *Page 1382 
new husband, Isaac Crandall, lived on the property. In 1952, Liddie sold the property to her sister, Alice McKinley, who lived on the land periodically until 1963, when she sold the land back to Liddie. In 1961, which was during the period McKinley had title to the property, Liddie conveyed a portion of the land to Mattie Crosby. Crosby never lived on the land, but had partially completed a house on it, which was hidden from sight by trees. During this entire period Liddie continued to live on the land in the house she and Herman Boler had built. Neither Angelina Smith nor Senry Boler knew that the land had been sold to McKinley or Crosby.
Liddie has assessed the property and paid the taxes since Herman Boler's death and did so even during the period McKinley had title. Liddie's brother also lived on the property for several years in two different houses until he moved to a nursing home a few years ago. Boler's heirs knew that the brother had lived there. In 1978, a few years after Isaac Crandall's death, Liddie sold the property to Percy Marino, who began to make improvements on the land. However, Marino verbally agreed to allow Liddie to remain on the property until her death.
Upon the death of a husband, a widow has a right of dower, which is not a property right but an equity; and it does not become a property interest until there has been an assignment thereof.[1] Gillian v. Gillian, 340 So.2d 785 (Ala. 1976); UnitedStates v. Hiles, 318 F.2d 56 (5th Cir. 1963); Alabama Code (1975), § 43-8-114. Dower does not vest automatically in the widow but is allocated only on petition of the widow, heirs, or other interested parties. Gillian, 340 So.2d at 787. Liddie not only failed to have her husband's estate probated, but she also failed to have her dower set aside.
The widow is entitled to quarantine as an incidental right to dower. Hale v. Cox, 240 Ala. 622, 200 So. 772 (1941). The right of quarantine exists before dower is assigned and continues during the widow's lifetime. Id. Failure to have dower assigned, and permitting the widow to retain possession without more, does not deprive the owner of the fee in the land. Lynchv. Jackson, 235 Ala. 90, 177 So. 347 (1937).
It has been recognized that a widow retaining possession by virtue of her quarantine rights may acquire title by adverse possession. Taylor v. Russell, 369 So.2d 537 (Ala. 1979); Whitev. Williams, 260 Ala. 182, 69 So.2d 847 (1954); Branford v.Shirley, 241 Ala. 314, 2 So.2d 403 (1941). However, a widow whose dower remains unassigned cannot acquire title by adverse possession as against heirs simply by remaining in possession of her husband's land. Taylor, 369 So.2d at 541.
In order for the widow to obtain title by adverse possession she must repudiate the title of her husband and disavow any claim to such title and give notice of the disavowal, and that notice must be brought home to the heirs. Id. If possession is open, notorious, and visible, a presumption of notice may arise. Id. at 542. However, it should be noted that all presumptions are favorable to the title, and possessions are not presumed to be hostile to it. White, 260 Ala. at 187,69 So.2d at 851. To change a permissive or otherwise nonhostile possession into one that is hostile, there must be either actual notice of the hostile claim or acts or declarations of hostility so manifest and notorious that actual notice will be presumed. Id.
Liddie did not repudiate her husband's title to the property, nor did she disavow any claim to such title by her husband's heirs. Thus, we must consider whether her actions were so open and notorious as to constitute actual notice to the heirs. The heirs were not aware of Liddie's sale of the land to McKinley or Crosby. Since Liddie continued to live on the land there were no acts which put the heirs *Page 1383 
on notice of her claim to the title. It was not until after Liddie had sold the land to Marino that the heirs noticed that trees had been cut and that a bulldozer had been on the land.
The ten-year period of limitations required to establish adverse possession begins to run from the date of notice of hostility and it is not operative before hostility is shown.Bell v. Pritchard, 273 Ala. 289, 139 So.2d 596 (1962); Alabama Code (1975), § 6-5-200. The heirs were not on notice of the sale to Marino until sometime after September 1978. This suit was filed in September 1980. Thus, a sufficient period of hostility was not shown.
We note that the heirs were aware of the fact that Liddie's brother lived on the property; however, this does not establish Liddie's disavowal of the heirs' claim, especially since Liddie continued to live on the property as well.
Reviewing the evidence, we find no acts so open and notorious as to establish title by adverse possession. Accordingly, the judgment is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, EMBRY and ADAMS, JJ., concur.
[1] The Alabama Legislature enacted sweeping changes in our probate system effective on January 1, 1983. Cf. Ala. Code §43-8-1, et seq. We note that Ala. Code (1975), § 43-8-57, abolished the estates of dower and curtesy; nevertheless, this section does not affect the rights of dower in existence prior to January 1, 1983.